Argued and submitted April 3, the decision of the Court of Appeals affirmed in part and reversed in part; the judgment of the circuit court affirmed in part and reversed in part and remanded for further proceedings October 10, reconsideration denied November 26, 1991

# Hamid MADANI,
*Petitioner/Respondent on Review,*

*v.*

# KENDALL FORD, INC.,
## and Dan David,
*Respondents/Petitioners on Review.*

## (CC 16-87-02515; CA A49072; SC S37390, S37408)

818 P2d 930

Robert E. Franz, Jr., Eugene, argued the cause and filed the petition for petitioner/respondent on review.

Jeffrey E. Potter, of Lombard, Gardner, Honsowetz, Brewer & Schons, Eugene, argued the cause for respondents/petitioners on review. With him on the petition was Jack A. Gardner, Eugene.

GRABER, J.

## GRABER, J.

This case concerns the sufficiency of the pleading of two tort claims: wrongful discharge and intentional infliction of severe emotional distress. We hold that plaintiff's amended complaint is not sufficient to plead either tort.

Plaintiff's amended complaint alleges that defendant Kendall Ford, Inc., employed him as a salesperson and that defendant Dan David was his supervisor. In his claim for wrongful discharge, plaintiff further alleges that

"defendants instructed plaintiff to pull down his pants, and expose his buttocks, testicles, and penis to Defendant Dan David, and others. At the time of said instruction, plaintiff was on duty, at work, and was standing in a public place which was in the open view of members of the public, including fellow employees, children, women, and customers."

Plaintiff alleges that he refused to do as instructed, was instructed twice more to pull down his pants, and again refused. Finally, he alleges:

"5.

"As a result of failing to do as instructed and ordered, on or about October 22, 1986, defendants terminated plaintiff.

"6.

"As a result of his wrongful termination, plaintiff has undergone mental pain and suffering, depression, anxiety, lost wages, loss of self-esteem, and embarrassment all to his damage in the sum of $150,000.

"7.

"As a result of defendants' wrongful termination of plaintiff, plaintiff has also been required to seek psychiatric treatment, and has incurred medical bills, the total amount of which will be proved at the time of trial.

"8.

"The wrongful termination of plaintiff by defendants constitutes wanton misconduct by defendants; therefore, plaintiff is entitled to punitive damages from defendants in the amount of $500,000."

The claim for intentional infliction of severe emotional distress incorporates all the allegations of the wrongful discharge claim and adds:

> "Such conduct by defendants was outrageous, shocking to the conscience and beyond the bounds of tolerable behavior, and was intended to cause and did cause plaintiff severe emotional distress."

Pursuant to ORCP 21A(8), defendants moved to dismiss both tort claims for failure to state ultimate facts sufficient to constitute a claim. The trial court granted the motion and entered judgment for defendants.[1] Plaintiff appealed.

The Court of Appeals panel wrote three opinions. A majority affirmed the dismissal of the wrongful discharge claim; a different majority reversed the dismissal of the claim for intentional infliction of severe emotional distress. *Madani v. Kendall Ford, Inc.*, 102 Or App 478, 794 P2d 1250 (1990). Plaintiff petitioned for review on the wrongful discharge claim; defendants petitioned for review on the claim for intentional infliction of severe emotional distress; we allowed both petitions.

■ On review of an order dismissing claims under ORCP 21A(8), we accept the allegations pleaded in the complaint as true. *Nicholson v. Blachly,* 305 Or 578, 580, 753 P2d 955 (1988). We affirm the decision of the Court of Appeals with respect to the wrongful discharge claim but reverse with respect to the claim for intentional infliction of severe emotional distress.

This court summarized Oregon law concerning wrongful discharge in *Sheets v. Knight,* 308 Or 220, 230-31, 779 P2d 1000 (1989):

---

[1] Plaintiff had additional claims that we need not consider. His claim for breach of contract against defendant Kendall Ford, Inc., was tried to a jury. At the close of plaintiff's case, the trial court granted defendant's motion for a directed verdict. Neither party petitioned for review of the Court of Appeals' holding that there was sufficient evidence to create a question of fact for the jury to decide and that the trial court erred in granting defendant's motion for a directed verdict. Our disposition of this case therefore affirms the Court of Appeals' disposition of the contract claim.

Additional claims were dismissed by the trial court before trial, but plaintiff did not assign error to those rulings.

"In *Patton v. J. C. Penney Co.,* 301 Or 117, 120, 719 P2d 854 (1986), we stated that '[g]enerally an employer may discharge an employee at any time and for any reason, absent a contractual, statutory or constitutional requirement [to the contrary]. Termination of employment ordinarily does not create a tortious cause of action.' (Citations omitted.)

"The *Patton* opinion reviewed a series of recent employment termination cases [citations omitted] and enumerated the following exceptions: (a) a discharge for exercising a job-related right, *Brown v. Transcon Lines,* [284 Or 597, 588 P2d 1087 (1978)] (employee who alleged that he had been discharged for filing workers' compensation claim may bring tort action because statutes forbidding discrimination against employee who files workers' compensation claim constitute legislative recognition of an important public policy and the discharge frustrated that substantial public interest), and (b) a discharge for complying with a public duty, *Nees v. Hocks,* [272 Or 210, 536 P2d 512 (1975)] (employer can be liable in tort for discharging an employee for serving on a jury)." (Footnote omitted.)

Plaintiff argues that the pleaded facts fit the second of those exceptions, because exposing himself would have been a criminal act under Lane County and City of Eugene ordinances[2] and he had a public duty to avoid committing a crime. Plaintiff contends that our cases permit tort recovery "whenever a man or wom[a]n is terminated for refusing to violate a criminal law." We have no occasion to agree or disagree with that general proposition — which forms the sole basis for plaintiff's theory of recovery — in deciding this case.

---

[2] Section 6.100 of the Lane County Code provides:

"(1) No person, eight years of age or older, shall on public or private property, expose his or her genitals to another person, except within the boundaries of private property with the permission of the owner of said property, that is screened so that the act cannot be viewed from any other property.

"* * * * *

"(4) Violation of LC 6.100(1) above is punishable upon conviction by a fine of not more than $1000 and by imprisonment in the County jail of not more than 30 days, or by both."

Section 4.760 of the Eugene City Code provides:

"It shall be unlawful for any person eight years of age or older to expose his or her genitalia while in a public place or place visible from a public place, if the public place is open or available to persons of the opposite sex."

Section 4.995 of the Eugene City Code provides that a violation of section 4.760 is punishable by a fine of up to $500 or a jail term of up to 100 days or both.

█ Even under his own argument as to the proper scope of the public duty theory, plaintiff's pleading of the tort of wrongful discharge is deficient, because his amended complaint failed to identify the public duty that he now asserts is involved. A plaintiff who claims wrongful discharge under the public duty theory must at least identify in the complaint the public duty on which the plaintiff relies. *Sheets v. Knight, supra,* 308 Or at 231. The statement that the relevant public duty is obedience to criminal laws that carry a potential term of incarceration appeared for the first time in plaintiff's appellate arguments, but it is not found in his amended complaint.[3] The trial court did not err in dismissing the claim for wrongful discharge.

█ We next consider the claim for intentional infliction of severe emotional distress.

"To state a claim for intentional infliction of severe emotional distress, a plaintiff must plead that (1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." *Sheets v. Knight, supra,* 308 Or at 236.

As plaintiff acknowledges,[4] the only act that he claims caused the distress was the firing itself. He alleges that he underwent mental pain and suffering, depression, anxiety, loss of self-esteem, and embarrassment *"[a]s a result of his wrongful termination."* (Emphasis added.) Similarly, he alleges that he sought psychiatric treatment *"[a]s a result of defendants' wrongful termination of [him]."* (Emphasis added.) The amended complaint does not allege that the underlying events caused distress.

---

[3] *See* ORCP 20D(2) (in pleading an ordinance or enactment of a county or incorporated city, or a right derived therefrom, it shall be sufficient to refer to it by its title, or commonly accepted name or number, and the date of its passage or approval).

[4] At oral argument, the court asked plaintiff's counsel to clarify specifically what conduct he was claiming in the complaint was outrageous and caused the distress. Plaintiff's counsel answered that he had pled that the termination was the conduct that was outrageous and caused the distress. He also acknowledged that, had plaintiff not been fired after the incident alleged, he would not have brought the action. The only damage that plaintiff claims is as a result of his termination.

The Court of Appeals majority read *Patton v. J. C. Penney Co., supra,* to permit recovery under this theory if the reason for the termination was "sufficiently outrageous":

> "As part of its consideration of the *manner* of the plaintiff's discharge, the court [in *Patton*] considered the *reason* for that discharge — that the plaintiff refused to terminate, at his employer's request, a relationship with a female co-employee. When it stated that the discharge, as a matter of law, was not conduct that was an extraordinary transgression of the bounds of social toleration, it determined, in effect, that a reasonable jury could not find that the *reason* for the plaintiff's termination was sufficiently outrageous." 102 Or App at 482-83 (Newman, J., concurring in part; dissenting in part; emphasis in original).

The Court of Appeals misread *Patton.* The Court of Appeals' interpretation effectively eliminates the distinction between wrongful discharge, which focuses on the reason for termination, and intentional infliction of severe emotional distress, which focuses on the manner of termination and on underlying acts preceding termination. The only relevant intent in the tort of intentional infliction of severe emotional distress is, as plaintiff pleaded, the "inten[t] to cause * * * plaintiff severe emotional distress."

■ An employer's motive for firing an employee may, in turn, be relevant to whether the employer intended to cause the employee severe emotional distress, but it is not a component of the third element identified in *Sheets v. Knight, supra,* 308 Or at 236. In order to state a claim for intentional infliction of severe emotional distress, the plaintiff must plead that "the defendant's *act* constituted an extraordinary transgression of the bounds of socially tolerable conduct." *Ibid.* (emphasis added). An employer's *motive* for the act is not relevant to whether the *act* extraordinarily transgressed the bounds of socially tolerable conduct; the act itself must be intolerable. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior. As this court wrote in *Patton v. J. C. Penney Co., supra,* 301 Or at 122-24:

> "Even if defendant fired plaintiff for refusing to break off a relationship with a co-employe and this was intended to, and in fact did, inflict severe emotional distress, the act of

firing is not beyond the bounds of socially acceptable behavior. * * *

"* * * [H]ere, the employer had the right to discharge the employe at will; he warned the employe that he would be discharged if he pursued a private right and he did in fact discharge him. * * * Private employers who engage in the free enterprise system and risk their own capital can fire employes at any time and at will. * * *

"The key focus in intentional infliction of severe emotional distress cases is not on the result, but on the purpose and the means used to achieve it. In *Brewer v. Erwin*, 287 Or 435, 457, 600 P2d 398 (1979), for example, this court held that:

" '[T]he essence [of the tort] is that the infliction of actual mental suffering on the plaintiff is the deliberate purpose of defendant's conduct, although that conduct may of course have an ulterior objective * * *. The[re is an] additional requirement that defendant's means of inflicting the injury must have been extraordinary * * *.'

"The intentional infliction of severe emotional distress claim in *Brewer* was based on defendant's effort to frighten or bully plaintiff out of her apartment by particularly obnoxious *means*: disconnecting utilities, using physical violence and threats of violence, and demolishing the building under her feet. * * *

"In the case at bar, the alleged manner in which plaintiff was discharged does not reach the level of intolerable conduct * * *." (Emphasis added.)

*See also Sheets v. Knight, supra,* 308 Or at 236 ("In *Patton* we held that a discharge from employment, without more, did not amount to an extraordinary transgression of the bounds of socially tolerable behavior").

■    An employee who has been discharged can state a claim for intentional infliction of emotional distress if the employer committed abusive acts in the course of the firing. Here, however, plaintiff does not allege that the method of firing him was anything other than ordinary. He simply complains of the alleged reason why he was discharged. An employee also can recover if the underlying acts preceding the firing were an extraordinary transgression of the bounds of socially tolerable conduct and if those acts caused the severe

distress. Again, that is not this case. The pleadings allege that plaintiff was distressed only by being fired.

The amended complaint fails to state a claim for intentional infliction of severe emotional distress. Therefore, the trial court did not err in dismissing the claim.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed as to dismissal of the claims for wrongful discharge and intentional infliction of severe emotional distress; the judgment of the circuit court is reversed as to the claim for breach of contract, and the case is remanded for further proceedings on the claim for breach of contract.