134 F.3d 379
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Edmund STONE, Plaintiff-Appellant,
v.
NORDSTROM, INC., a Washington corporation doing business in
Oregon, Defendant-Appellee.
 No. 97-35016.
 United States Court of Appeals, Ninth Circuit.
 Submitted: January 9, 1998**
Decided Jan. 28, 1998.
 
 Before: ALDISERT,*** PREGERSON, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Because the parties are familiar with the factual and procedural history of this case, we will not recount it here except as necessary to clarify our decision.
 
 I. AGE DISCRIMINATION CLAIM
 
 3
 The district court found that Stone failed to establish a prima facie case of age discrimination because he did not show that he was performing his job in a satisfactory manner before he was fired. See Rose v. Wells Fargo & Company, 902 F.2d 1417, 1421 (9th Cir.1990). Stone admitted that he violated Nordstrom's policy on several occasions by eating food from its cafe without prior payment. Moreover, his supervisor caught him eating and drinking coffee from the cafe when he should have been working.
 
 
 4
 Stone also failed to raise a triable issue of fact as to whether Nordstrom's proffered reasons for firing him were a pretext for age discrimination. See Wallis v. J.R. Simplot Company, 26 F.3d 885, 890 (9th Cir.1994). It is undisputed that Nordstrom's store manager did not know Stone and was unaware of his age when she made the decision to fire him. Summary judgment is proper when an employer is unaware of the plaintiff's protected status when it makes the adverse employment decision. See DeHorney v. Bank of America National Trust and Savings Assoc., 879 F.2d 459, 467-68 (9th Cir.1989); Robinson v. Adams, 847 F.2d 1315, 1316 (9th Cir.1987).
 
 
 5
 Stone presents no evidence to suggest that he was fired for his age. Indeed, he concedes that he could not think of any reason why Nordstrom's employees would want to discriminate against him. In deciding whether an employer's proffered reasons are pretextual, the ultimate question is whether "it is more likely than not that the employer's conduct was motivated solely by intentional discrimination." Sischo-Nownejad v. Merced Community College District, 934 F.2d 1104, 1109 (9th Cir.1990). Summary judgment was appropriate because there was a "total lack" of evidence to refute Nordstrom's legitimate reasons for firing Stone or to reveal such reasons as a pretext for age discrimination. Wallis, 26 F.3d at 890.
 
 
 6
 II. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
 
 
 7
 Summary judgment was also appropriate on Stone's claim of intentional infliction of emotional distress because Stone failed to raise a triable issue of fact as to whether Nordstrom's conduct constituted an "extraordinary transgression of the bounds of socially tolerable conduct." See McGanty v. Staudenraus, 901 P.2d 841, 849 (1995). "The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." See Madani v. Kendall Ford, Inc., 818 P.2d 930, 934 (1991). But an employee may state a claim for intentional infliction of emotional distress if the employer commits abusive acts in the course of firing the employee. Id. Oregon courts have found such abusive acts when the employer engages in a "cold blooded tactic of interrogation" to frighten an employee into admitting to wrongdoing before being fired. See Hall v. May Department Stores Co., 637 P.2d 126, 132-33 (1982); Smithson v. Nordstrom, Inc., 664 P.2d 1119, 1121 (1983).
 
 
 8
 Two Nordstrom employees, Tami Goetz and Elvira Corey, interviewed Stone after his supervisor caught him eating food from the Nordstrom cafe during business hours. Stone argues that these interviews fall within the conduct prohibited in Hall and Smithson because Goetz and Corey allegedly used "cold blooded tactics" to trick him into confessing to theft. Stone's case is easily distinguishable from Hall and Smithson. The decisions in both of those cases hinged on the fact that security officers pretended to have evidence against the plaintiff, and engaged in trickery and intimidation to extract confessions. Hall, 637 P.2d at 132-33; Smithson, 664 P.2d at 1121. In contrast, Stone was never wrongfully accused because he immediately admitted to wrongdoing.
 
 
 9
 Moreover, the circumstances of Stone's interviews do not approach the egregious conditions in Hall and Smithson. In Hall, the plaintiff was interrogated by the employer's store security officer. During the course of the interview he yelled at her and slapped his hand on his desk. He accused her of stealing and threatened her with prosecution and imprisonment. Hall, 637 P.2d at 132. In Smithson, two security officers interrogated the plaintiff about whether she had stolen goods from the employer. The security officers questioned her in a small windowless room for over three hours. They pretended to have evidence against her, and told her that they would have her taken to jail and interrogated all night if she did not sign a confession. Smithson, 664 P.2d at 1120-21.
 
 
 10
 Stone was not questioned by security guards. His first interview lasted thirty minutes, and it is undisputed that the Goetz never raised her voice, slammed her hand on the table, or threatened to involve the police. In the second interview, Ms. Goetz and Ms. Corey sat across the desk from Stone. Ms. Corey asked him to amend his written statement about the incident to clear up some inconsistencies. Stone does not allege that he was told what to write in his statement, and does not allege that either Goetz or Corey engaged in any threatening or deceptive conduct during the second interview. An employer does not exceed the boundaries of socially acceptable conduct when it questions or accuses an employee about suspected wrongdoing, even if such accusations are made in raised voices. Hall, 637 P.2d at 132-33; Watte v. Edgar Maeyens, Jr., M.D., 828 P.2d 479, 480 n. 2 (1986). Therefore, the district court did not err in granting summary judgment.
 
 
 11
 The district court's grant of summary judgment is AFFIRMED.
 
 
 
 **
 The panel finds this case appropriate for submission without argument pursuant to Fed. R.App. P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 * Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3